# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39637**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Brian A. BATSON**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 18 February 2021

———————————

*Military Judge:* Ryan A. Hendricks (motions); Joseph S. Imburgia (arraignment, motions, and trial).

*Approved sentence:* Dishonorable discharge, confinement for 8 years, forfeiture of all pay and allowances, and reduction to E-3. Sentence adjudged 26 September 2018 by GCM convened at Joint Base Pearl Harbor-Hickam, Hawaii.

*For Appellant:* Major Rodrigo M. Caruço, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Captain Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire.

Before LEWIS, POSCH, and CADOTTE, *Appellate Military Judges*.

Senior Judge POSCH delivered the opinion of the court, in which Senior Judge LEWIS and Judge CADOTTE joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

POSCH, Senior Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification each of indecent recording of the private area of four women, two specifications of obstructing justice by endeavoring to impede an investigation of his conduct, and one specification of possessing child pornography, in violation of Articles 120c and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920c, 934.[1] The members sentenced Appellant to a dishonorable discharge, confinement for eight years, forfeiture of all pay and allowances, and reduction to the grade of E-3.

Before taking action on the sentence, the convening authority deferred the adjudged and mandatory forfeitures beginning 14 days after the sentence was adjudged until action, and waived the mandatory forfeitures for the benefit of Appellant's dependent child for a period of six months, or upon Appellant's release from confinement or the expiration of Appellant's term of service, whichever was sooner, with the waiver commencing 14 days after the sentence was adjudged. At action, the convening authority suspended the execution of the adjudged forfeitures for three months,[2] but otherwise approved the sentence as adjudged.

Appellant raises eight issues on appeal. The first is an assignment of error that Appellant raises through his appellate counsel: (1) whether the military judge erred in admitting three videos pursuant to Mil. R. Evid. 404(b) to "rebut" defense counsel's opening statement. In addition to this issue, Appellant personally raises seven issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), all but the first of which require this court to resolve whether investigators, prosecutors, and trial defense counsel violated his rights, above all his right to a fair trial. In a post-trial declaration submitted

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial, and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*).

[2] With respect to the suspension, the convening authority ordered the forfeiture of pay and allowances to be executed,

> but the execution of the first three months of that part of the sentence extending to forfeiture of total pay and allowances is suspended for three months, at which time, unless the suspension is sooner vacated, the suspended part of the sentence will be remitted without further action. The collection of the remaining forfeiture of total pay and allowances will begin at the end of the period of suspension, or sooner if the suspension is vacated.

to this court,[3] Appellant claims that (2) his conviction for one of the two specifications of obstruction of justice is legally and factually insufficient; (3) the search warrant issued in his case violated Appellant's right to be free from unreasonable searches and seizures under the Fourth Amendment;[4] (4) the findings and sentence should be set aside because agents of the Air Force Office of Special Investigations (AFOSI) directed witnesses to destroy evidence; (5) trial counsel engaged in prosecutorial misconduct throughout the trial; (6) AFOSI agents unlawfully harassed and intimidated potential witnesses into participating and testifying against Appellant; (7) Appellant was denied effective assistance of counsel under the Sixth Amendment[5] as alleged in four deficiencies in the performance of his trial defense counsel; and (8) the individual errors rise to cumulative error and warrant setting aside the findings and sentence. In addition to Appellant's claims, we consider the issue of timely appellate review.

With respect to issue (8), we have considered Appellant's contention and find it does not require further discussion or warrant relief; and, based on our resolution of issues (1) through (7), we find no merit to issue (8).[6] *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). We also find no merit to Appellant's concerns that government officials engaged in misconduct that denied him a fair trial, and no error that materially prejudiced Appellant's substantial rights. We thus affirm the findings and sentence.

## I. BACKGROUND

Appellant's conduct came to the attention of special agents of the AFOSI in early April 2017 when his ex-girlfriend reported him for making indecent videorecordings of unsuspecting women. The ex-girlfriend met with AFOSI agents and allowed them to extract pictures and videos from her cell phone that she claimed were proof of Appellant's "sexual[ly] deviant activities." The evidence she provided to the agents included videos Appellant had recorded of women's

---

[3] Except as addressed in this opinion, we consider Appellant's declaration only to the extent it includes "briefs and arguments" that "the appellant personally" presents regarding matters in the record of trial and attached to the record of trial. *United States v. Jessie*, 79 M.J. 437, 440–41 (C.A.A.F. 2020) (citing *United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988)).

[4] U.S. CONST. amend. IV.

[5] U.S. CONST. amend. VI.

[6] We will set aside the findings or sentence, as appropriate, if the cumulative effect of all plain and preserved errors denied an appellant a fair trial. *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011). "Assertions of error without merit are not sufficient to invoke this doctrine." *United States v. Gray*, 51 M.J. 1, 61 (C.A.A.F. 1999).

private areas without their knowledge that they were being recorded. Later the same day she gave agents a thumb drive she had kept in a secure location that contained evidence she claimed would be found on Appellant's media devices.

AFOSI agents examined the digital media given to them by the ex-girlfriend and discovered two videos that Appellant made in the fall of 2014 of his friend, AD, when he filmed up her skirt without her knowledge. The investigation also uncovered that at the same time as Appellant was photographing a baby shower for another female friend in January 2017, Appellant filmed three guests using the bathroom. Appellant used a camera that he hid inside a rack of towels above the toilet and the recordings captured the exposed buttocks of each guest.

A few days after Appellant's conduct came to the attention of the AFOSI agents, his first sergeant escorted him to the AFOSI detachment for questioning. A month later, Appellant twice obstructed justice by endeavoring to impede the investigation of his conduct. The first incident of which Appellant was found guilty of obstructing justice occurred in early May 2017 when Appellant learned from another female friend, AT, that AFOSI agents wanted to interview her about a video they believed Appellant had recorded. Before AT learned about the contents of the video or participated in the AFOSI interview, Appellant went to her home and volunteered that he had once hidden a camera in her bedroom, which he had since removed.[7] Appellant told AT that if the agents asked her about a video he made of her then it would be "beneficial" if she told them it was recorded with her consent, although it would be best to say nothing at all. Appellant claims in his appeal that this conviction is legally and factually insufficient.

Appellant was found guilty of obstructing justice a second time for an incident in mid-May 2017 when law enforcement authorities were executing a search of Appellant's home to collect evidence from his computers and other digital media. While police and AFOSI agents were in his off-base duplex, which he shared with a neighbor, Appellant asked the neighbor to shut off the electricity using the main circuit breaker for Appellant's unit that was located inside the neighbor's residence. Evidence at trial established that an electronic device remains decrypted so long as the device is powered on; however, once power to a device has been turned off, a password is required to decrypt the device when power is restored. Within five minutes after the neighbor turned off Appellant's power, police who were assisting AFOSI with the search con-

---

[7] Appellant was not charged with an offense for placing a video camera inside AT's home and then using it to make a recording without her knowledge.

firmed that the neighbor shut off the electricity to Appellant's unit. Before Appellant asked his neighbor to turn off the electricity, he asked his first sergeant to do it, and he refused.

Forensic analysis of media seized from Appellant's residence recovered digital images and videos of minors engaging in sexually explicit conduct. This evidence was the basis for Appellant's conviction for wrongfully possessing child pornography.

## II. DISCUSSION

### A. Admissibility of Uncharged Acts under Mil. R. Evid. 404(b)

Appellant challenges the military judge's ruling denying his motion to exclude three videos that were admitted as a crime, wrong, or other act under Mil. R. Evid. 404(b). We find the military judge did not clearly abuse his discretion in admitting this evidence despite his erroneous ruling that the videos were admissible to rebut remarks made by Appellant's trial defense counsel in opening statement.

#### 1. Additional Background

Appellant was convicted of filming the private area of a female friend, AD, on one occasion in 2014 without her knowledge. The primary evidence supporting this offense was two videos that Appellant was charged with making.[8] Appellant's ex-girlfriend found the videos on his digital media, which she provided to agents of the AFOSI. At trial, AD identified herself in both videos and testified she was unaware Appellant had made recordings up her skirt on one day and up her dress another day until the videos were shown to her during the investigation.

Appellant's conviction was supported by evidence of three videos that Appellant recorded of other unsuspecting women that he was not charged with making. As with the charged videorecording of AD, Appellant's ex-girlfriend had extracted these videos from his electronic devices and gave them to agents of the AFOSI. Over defense objection, the military judge admitted the three videos at the end of the Prosecution's case-in-chief as evidence of a "crime, wrong, or other act" under Mil. R. Evid. 404(b). Initially, the military judge excluded this evidence and denied the Prosecution's first motion to reconsider his ruling. We describe each video in turn in some detail as it bears on our analysis of the military judge's ruling to admit each.

---

[8] Appellant was charged with the indecent recording of AD, but not on divers occasions.

### a. The Three Uncharged Acts of Videorecording

The first video was recorded in a grocery store from the vantage of a camera pointing upwards and placed in a handbasket. Initially, Appellant's face appears in the foreground with the store ceiling and florescent lights in the background. Early in the recording, Appellant looks directly down into the camera as he places, and then removes, an item from the basket. Appellant then moves the camera slightly, seemingly to accommodate the same or another item he had chosen to purchase. At one point, the video captures the top half of Appellant's military uniform, and his name tag and face are visible. Moments later, the camera wobbles in the basket as it records the back of an unidentified woman wearing a black dress who is shopping in the store. Less than one minute later, the video is steady as if the basket has been placed on the floor. The focal point at the end of the recording is the woman's back, buttocks, and hemline as the camera records underneath her dress for several seconds.

Like the first video, a second video captures a female's clothed back and buttocks and is filmed from a low vantage point. The video begins as a shaky, inverted recording in a living room with a ceiling fan, furniture, musical instruments, and several wall clocks, as though Appellant had turned on his camera before training it on his subject. Seconds later, Appellant's face appears against the ceiling and his left hand recedes from view as he places the camera on the floor below a glass table. Appellant can be seen moving and repositioning the camera with his foot until it is directly beneath a woman wearing a short skirt. The focal point is underneath the back of the woman's skirt and a tattoo on her upper thigh. Appellant records the woman until she turns and walks away. The video ends after Appellant again moves the camera with his foot, and the final image shows Appellant's face as he reaches with his right hand to retrieve the camera from the floor.

A third video begins inside an elevator and shows a female child standing in front of the elevator doors and then fixes on a woman wearing short shorts and sandals holding a young child. A male voice speaks to the female child and calls the name of Appellant's daughter, assuring her that they will be home soon, at the same time that the camera remains trained on the front of the woman's legs from her waist to her feet. When the group reach the main floor, the camera follows the woman out of the elevator and the focal point is the woman's buttocks as she walks ahead. The recording ends with a close-up shot from below the woman's shorts that is briefly fixed on the woman's buttocks and legs as she stands near the building's exit.

### b. Rulings

Before trial, in a session held outside the presence of the panel members under Article 39(a), UCMJ, 10 U.S.C. § 839(a), the military judge excluded the

three videos, concluding that none were admissible under Mil. R. Evid. 404(b). Following the analysis of our superior court in *United States v. Reynolds*, 29 M.J. 105 (C.M.A. 1989), he ruled that the videos either failed to make a fact of consequence more or less probable, or failed to satisfy "any of the proffered non-predisposition uses tendered by the government."[9] The military judge also found their probative value was substantially outweighed by the potential for unfair prejudice to Appellant under Mil. R. Evid. 403.

Before opening statements, the Prosecution moved the military judge who presided at Appellant's trial and sentencing[10] to reconsider the ruling by the first detailed military judge. Initially, the military judge affirmed on the same grounds as the military judge who originally ruled on the motion. Later, toward the end of the Prosecution's case-in-chief, trial counsel asked the military judge to again reconsider his ruling, this time arguing that the videos were admissible to "rebut" the Defense's opening statement.[11] That is, in his opening statement, senior defense counsel emphasized that the Prosecution had to prove Appellant *knowingly* created a video of AD. Senior defense counsel explained to the members:

> You're going to see a blurry video, pretty quick, moving around. . . . Ms. [AD] will come in and say that was her. We expect she'll say that she didn't know it was happening or it wasn't with her permission. And you're going to see [Appellant]'s face flash in. You're going to have to decide whether or not it shows a private area, that's something you'll have to decide. And you're going to have to decide if the evidence supports that he did it.[12] That he *knowingly* did it. Because he is not charged with having it. It's not a possession charge. Let's just start with the elements, was that he *knowingly*[13] created that film. You'll have to decide that.

(Emphasis added). Senior defense counsel then moved on and discussed different videos that were charged in other specifications.

---

[9] The Prosecution offered the three videos to prove modus operandi, plan, scheme, intent, and motive.

[10] A different military judge was detailed to preside over findings and sentencing.

[11] Notably, trial defense counsel did not cross-examine AD.

[12] The court reporter added this parenthetical at the end of the sentence: "Defense counsel slowed down to emphasize this next point."

[13] The court reporter added this parenthetical: "Defense counsel put emphasis on the word 'knowingly.'"

The military judge granted the motion to reconsider and allowed the three videos to be introduced as evidence under Mil. R. Evid. 404(b). He explained "that senior defense counsel's comments in opening statement could have, *alone*, opened the door to rebuttal evidence on the issue of knowledge or lack thereof with respect to [the charged videorecordings], and did." (Emphasis added). Senior defense counsel, he explained, opened the door:

> Here, senior defense counsel could have reserved opening, but chose to provide one at the outset. Senior defense counsel could have stated simply the elements of the offense, and that the government would not be able to meet their high burden on those elements. Instead, senior defense counsel gave an opening that focused on the element of knowledge, or lack thereof, with respect to [the charged videorecording offense of AD]. In it, [the] defense made several comments in its opening statement about knowledge that opened the door to the rebuttal evidence the government now seeks to admit. The repeated references to the knowledge element, the tone and manner in which defense counsel stated the word "knowingly" in the phrase "you're going to have to decide if the evidence supports that he did it, that he knowingly did it," the emphasis on the "important elements" of knowledge, the focus on "Let's just start with the elements, was that he knowingly created that film. You'll have to decide that," and then moving on to [the other charged videorecording specifications] without focusing on the other elements of [the charged offense involving AD]; the comments on the government's "evidence" with respect to knowledge and how it would "fall short," the comment on the "two short clips" of videos admitted with respect to this offense that the videos were "blurry," "pretty quick [and] moving around;" combined with the actual videos admitted, and the testimony of [AD], collectively allow the government to rebut the implication of lack of knowledge.

The military judge found as a matter of law "that opening statements *alone* can, in the right context, open the door to rebuttal evidence." (Emphasis added). He observed "that [senior] defense counsel's comments made during opening statement, combined with *other* evidence presented, can open the door to rebuttal evidence and that is the situation we have here." (Emphasis added). However, the military judge's ruling identified no evidence that Appellant introduced that opened the door, and because trial defense counsel did not cross-examine AD, the only "other evidence" that the military judge may have found

determinative would have been introduced by the Prosecution.[14] The military judge conducted a new analysis of the evidence using the three-part test in *Reynolds*, 29 M.J. at 109, and ruled that the videos were admissible under Mil. R. Evid. 404(b).

This court's resolution of Appellant's assignment of error turns on the military judge's conclusion that remarks made by Appellant's trial defense counsel in opening statement opened the door to rebuttal evidence as well as his application of the *Reynolds* test to admit evidence previously excluded. We consider the military judge's ruling as to both issues after setting forth the legal standard for admitting evidence under Mil. R. Evid. 404(b).

### 2. Law

Mil. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act by a person is not admissible as evidence of the person's character in order to show the person acted in conformity with that character on a particular occasion, and cannot be used to show predisposition toward crime or criminal character. However, such evidence may be admissible for another purpose, including to show motive, intent, plan, absence of mistake, or lack of accident. Mil. R. Evid. 404(b)(2); *United States v. Staton*, 69 M.J. 228, 230 (C.A.A.F. 2010) (citation and footnote omitted). The list of potential purposes in Mil. R. Evid. 404(b)(2) "is illustrative, not exhaustive." *United States v. Ferguson*, 28 M.J. 104, 108 (C.M.A. 1989) (footnote omitted).

We apply a three-part test to review the admissibility of evidence under Mil. R. Evid. 404(b): (1) Does the evidence reasonably support a finding by the factfinder that Appellant committed other crimes, wrongs, or acts? (2) Does the evidence of the other act make a fact of consequence to the instant offense more or less probable? and (3) Is the probative value of the evidence of the other act substantially outweighed by the danger of unfair prejudice under Mil. R. Evid. 403? *Reynolds*, 29 M.J. at 109 (citations omitted). "If the evidence fails to meet any one of these three standards, it is inadmissible." *Id*.

A military judge's ruling under Mil. R. Evid. 404(b) and Mil. R. Evid. 403 will not be disturbed except for a clear abuse of discretion. *United States v. Morrison*, 52 M.J. 117, 122 (C.A.A.F. 1999) (citation omitted). "A military judge

---

[14] Trial defense counsel asked the military judge, "What, if anything, did the Court find the [D]efense did to open the door . . .?" The military judge replied that the door was opened by "[a]ll those comments . . . in the opening statements, plus the evidence thus far presented to the members." Trial defense counsel again sought clarification, "Is it evidence that the [D]efense presented or is it evidence that was presented by the [G]overnment?" The military judge explained "So it's the evidence presented to the members collectively" that opened the door, which included "the testimony of that particular witness[, AD,] named in . . . Specification 1 of Charge I, collectively."

abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008) (per curiam)).

### 3. Analysis

#### a. Evidence Offered in Rebuttal to Opening Statement

The military judge abused his discretion when he relied on evidence that the Prosecution presented on the merits to find that Appellant's trial defense counsel opened the door to rebuttal evidence. The military judge's ruling held Appellant to account for "evidence presented to date in the trial, taken together collectively," and for trial defense counsel's opening statement "combined with other evidence presented." However, the military judge's ruling identifies no evidence introduced by the Defense that opened the door, and on this record—where trial defense counsel did not cross-examine AD—we find none. The only defense action on which the military judge could have relied to find a door was opened was trial defense counsel's opening statement.

We are not convinced that remarks made by counsel during opening statement open the door to evidence ruled inadmissible under Mil. R. Evid. 404(b). At most, a remark made by the defense can be "fair game for appropriate comment in the prosecutor's *closing argument.*" *United States v. Turner*, 39 M.J. 259, 263 (C.M.A. 1994) (footnote and citations omitted). This is so because "opening statements are not evidence." *Id.* at 262–63 (citing *United States v. Clifton*, 15 M.J. 26, 29 (C.M.A. 1983)). In this regard, our superior court cautions that "[y]ellow flags (if not red flags) should be apparent when, in response to a mere assertion by counsel during argument, the prosecution seeks to introduce evidence . . . ." *Id.* at 263 (citation omitted).

We agree with Appellant that rather than heed these flags, the military judge erroneously concluded "as a matter of law" that an opening statement may open the door to "rebuttal" evidence despite the fact that remarks in opening statement are merely what counsel expect the evidence will show. "It is well settled that the function of rebuttal evidence is to explain, repel, counteract or disprove the evidence introduced by the opposing party." *United States v. Banks*, 36 M.J. 150, 166 (C.A.A.F. 1992) (citations omitted). "The scope of rebuttal is defined by evidence introduced by the other party." *Id.* (citations omitted). Consistent with *Turner*, our superior court has not expanded the scope of rebuttal evidence "to explain, repel, counteract or disprove," *Banks*, 36

M.J. at 166, remarks made by counsel in opening statement as found by the military judge.[15]

Nevertheless, and against our superior court's caution in *Turner*, the Government contends that the military judge did not abuse his discretion because military courts have not "resolved directly" whether a defense counsel's "opening statement alone is sufficient to open the door to what otherwise may be irrelevant evidence." The Government concedes that opening statements are not evidence but argues "studies have shown that 80% of jurors make up their minds during opening and never change their opinions," quoting *Turner,* 39 M.J. at 265 (Crawford, J., concurring in the result) (citing Jossen, *Opening Statements: Win it in the Opening*, 10 The Docket (The Newsletter of the National Institute for Trial Advocacy) 1, 6 (Spring 1986)). The Government further maintains we can find that such statements may open the door to rebuttal evidence because "[i]t is during the opening statement that the parties set forth their theory and theme of the case," again quoting *Turner*. *See id.* We disagree.

A party's "theory" and "theme" are not evidence any more than other remarks made by counsel during opening statement. While some members may develop impressions of the case that could become fixed in their minds before the presentation of evidence, this alone does not allow the prosecution to then rebut those remarks with evidence that has been ruled inadmissible. Even supposing the tacit conclusion from the studies the Government cites are correct—that 80 percent of factfinders already have an inelastic belief about an accused's guilt before they receive any evidence—it would lead us to arrive at the opposite conclusion than the Government wants us to reach. If more often than not, opening statements may be a surrogate for evidence in the minds of some factfinders, then it is essential a military judge remain resolute in making a clear, coherent distinction between remarks made during opening statement on the one hand, and evidence on the other. To the extent that the Government asks us to distinguish or limit the reach of our superior court's *Turner* decision,

---

[15] The military judge relied on *United States v. Houser*, 36 M.J. 392 (C.M.A. 1993), in which our superior court examined the testimony of an expert witness "in the context of the entire case," including opening statements, to find that a military judge did not abuse his discretion in admitting expert testimony. *Id.* at 400. However, unlike the evidence here that the military judge initially found did not make a fact of consequence to the instant offense more or less probable, the issue in *Houser* was whether the military judge abused his discretion when he applied the Mil. R. Evid. 403 balancing test to "[l]ogically relevant and reliable expert testimony" that went unchallenged on this latter basis. *Id.* at 399–400. Additionally, the trial defense counsel in *Houser* "conducted a rigorous cross-examination of the victim during which he further questioned her behavioral conduct," which was pertinent to Mil. R. Evid. 403 balancing. *Id.* at 400.

we are unpersuaded and decline to do so.[16] Following *Turner*, we conclude that the military judge erred in finding that remarks made by the Defense in opening statement conferred a right of rejoinder for the Government to introduce evidence. And, to the extent that the military judge ruled that defense counsel's opening statement alone can open the door to rebuttal evidence, he misapprehended the law applicable in courts-martial and contradicted his preliminary instruction to the members "that opening statements are not evidence. They are merely what counsel expect the evidence to show as this trial unfolds." Having applied an incorrect legal principle to admit evidence that had been excluded, we find an abuse of discretion. *See Ellis*, 68 M.J. at 344 (citation omitted).

However, even if we assume mere assertions in opening statement that challenge the Government's proof of an element of an offense may be rebutted with evidence that has been found inadmissible, we find the military judge abused his discretion when he misapprehended the threshold for "open[ing] the door" under the circumstances here. Our superior court has observed that rebuttal "is normally restricted to the proponent's presentation of 'evidence . . . made necessary by the opponent's case in reply.'" *United States v. Wirth*, 18 M.J. 214, 218 (C.M.A. 1984) (citing 6 Wigmore, *Evidence* § 1873 (Chadbourn rev. 1976)). That an appellant, in opening statement, would contest the significance of evidence that the Government intends to offer and then highlight how the Government's proof would fall short are not grounds to find that a closed door has precipitously swung open.

Central to our finding that the military judge erred is our conclusion that the remarks by trial defense counsel did not make it necessary for the Government to answer Appellant's contention that the Government would fail in its proof. The military judge found it significant that trial defense counsel elected to make an opening statement "at the outset" before presentation of evidence had begun, instead of waiting until after the prosecution rested its case, but failed to explain in his ruling why counsel's election was significant. Next, the military judge found consequential that trial defense counsel "focused on the

---

[16] Appellee cites *United States v. Franklin*, 35 M.J. 311 (C.M.A. 1992), as an instance when our superior court found counsel's opening statement sufficient to open the door. Like Appellee, Judge Crawford favorably cited *Franklin* for this proposition in her separate opinion in *United States v. Turner,* 39 M.J. 259, 266–67 (C.M.A. 1994) (citing *Franklin*, 35 M.J. at 317) (Crawford, J., concurring in the result). However, the *Turner* majority found Judge Crawford's reliance on *Franklin* inapt: "That case . . . was *not* one in which the opening statement *alone* served to permit admission of the challenged evidence; rather, the defense there had submitted *evidence* of innocent intent which the challenged evidence tended to rebut." *Id.* at 263 n.2. We find Appellee's reliance on *Franklin* inapt.

element of knowledge, or lack thereof," when counsel "could have stated simply the elements of the offense." Here too, the military judge failed to explain why trial defense counsel's focusing on a single element was germane. More generally, the ruling finds "the tone and manner" of trial defense counsel's remarks and his "repeated references to the knowledge element" were consequential. But, it is the Government's burden to prove guilt beyond a reasonable doubt. Rule for Courts-Martial (R.C.M.) 918(c), 920(e)(5)(D). That an appellant vigorously advocates that proof of an element will fall short does not plausibly open the door to allow the members to hear evidence that was ruled inadmissible. We agree with Appellant that repeating the elements of an offense that the Prosecution must prove and describing anticipated evidence does not open the door. We conclude that the military judge abused his discretion in finding that they did.[17]

### b. Admissibility of the Three Videos under Mil. R. Evid. 404(b)

However, we decline Appellant's invitation to cast the dispositive issue as the military judge's erroneous ruling that evidence he had excluded was admissible to rebut remarks made by Appellant's trial defense counsel in opening statement. Stated thusly, Appellant asks this court to set aside the finding of guilty. But resolving this issue does not require this court to focus on the reason that prompted the military judge to reconsider and then change his ruling.

Reconsideration generally may occur at any time, even *sua sponte*, if the military judge may have a change of mind. R.C.M. 905(f). In the end, the admissibility of the three videos and whether the military judge abused his discretion in admitting them depend on the military judge's *Reynolds* analysis. Having examined his analysis, we find the military judge did not abuse his discretion in granting the Government's motion for reconsideration. Despite his erroneous ruling that the three uncharged acts of indecent videorecording were proper rebuttal to the Defense's opening statement, the military judge did not abuse his discretion in ruling they were admissible in the Prosecution's case-in-chief. We consider each *Reynolds* prong in turn.

---

[17] The first military judge who ruled on the motion had identified that the defense trial strategy could change his decision to exclude the three videos if trial defense counsel chose "to attack" evidence that the recording was done intentionally. However, the military judge who presided at Appellant's trial did not state he relied on this aspect of the ruling when he granted trial counsel's motion to reconsider and admitted the three videos under Mil. R. Evid. 404(b).

Applying the first *Reynolds* prong—whether the evidence reasonably supports a finding by the factfinder that Appellant engaged in other acts—the military judge found the videos support "a reasonable finding that the accused committed these three uncharged acts." He explained,

> the video of the accused in a grocery store where he places the camera in a shopping basket and places the basket on the ground near a woman wearing a short black dress does support a finding that the accused committed the prior act, as does the video of the accused where he places a camera on the ground and moves it with his foot until it is underneath a female in a skirt or dress, as does the video where the accused, his daughter and [a] female carrying a child depart in an elevator and [he] records the female walking and focuses in on her buttocks.

Referring again to the grocery store video, the military judge found it "shows the accused manipulating the camera several times, covering it up, uncovering it, moving it, and there is no question that it is the accused in the video."

We find the military judge's factfinding on the first *Reynolds* prong was supported by the evidence of record. Appellant's face, military uniform, and name tag appear in one video, and his face appears in a second. There are ample surrounding circumstances from which the factfinder could conclude that the voice speaking the name of Appellant's daughter is none other than Appellant's and, consequently, that Appellant recorded the elevator video. Additionally, evidence established that Appellant's ex-girlfriend had extracted these videos from his electronic devices and handed them over to the AFOSI. Accordingly, the military judge properly concluded that each of the three videos reasonably supports a finding by the factfinder that Appellant committed an uncharged crime, wrong, or act. *See Reynolds*, 29 M.J. at 109 (citation omitted). Thus, the military judge did not abuse his discretion in applying the first *Reynolds* prong.

Applying the second *Reynolds* prong—whether evidence of the other acts makes a fact of consequence to the instant offense more or less probable—the military judge found that the three videos "show the deliberateness of the accused's conduct and tend to rebut the lack of knowledge issue" that the Defense raised in opening statement. The military judge further found that each of the three videos is "highly similar" to the charged videos because Appellant used "a recording device to film up the skirt, dress, [and] shorts of an unsuspecting female." Additionally, he considered that the evidence raised the lesser included offense of attempted indecent recording, finding that "the evidence tends to provide circumstantial evidence to show the accused's specific intent to attempt to knowingly and wrongfully film the private area of [AD]."

14

The military judge correctly applied the second *Reynolds* prong. Two facts of consequence in this litigated case are whether Appellant knowingly filmed the private area of AD and that in doing so Appellant's conduct was also wrongful.[18] *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 45c.b.(2)(a). "Private area" means "the naked or underwear-clad genitalia, anus, buttocks, or female areola or nipple." *MCM*, pt. IV, ¶ 45c.a.(d)(2). A third fact of consequence is whether Appellant had the specific intent necessary for conviction for the lesser included offense of attempted indecent recording of AD in violation of Article 80, UCMJ, 10 U.S.C. § 880.[19] At times, the charged acts of videorecording—two short clips that Appellant filmed with a handheld camera—were jerky, which could raise doubt whether Appellant's conduct was done knowingly or with specific intent, and not by accident. In this regard, senior defense counsel's observations in opening statement that the videos were "blurry," "pretty quick," and "moving around" accurately described the evidence that was before the members. Consequently, evidence that Appellant recorded similar videos of unsuspecting women on other occasions—notably, when the image was much less jerky and "quick"—was probative of Appellant's state of mind. Not insignificantly, both the charged and uncharged acts of videorecording showed underneath a woman's dress or skirt, or her buttocks, and from a low vantage point. Each was recorded with a camera that Appellant either held in his hand, or manipulated with his hand or foot. Evidence that Appellant surreptitiously made videorecordings on uncharged occasions strengthens the inference that Appellant's conduct in recording AD was done knowingly, if not deliberately or with specific intent, and made the mens rea element underlying both the charged and the lesser included offenses more probable. Finding that the uncharged acts of videorecording make facts of consequence to the instant offense more probable, *see Reynolds*, 29 M.J. at 109 (citation omitted), we conclude that the military judge did not abuse his discretion in applying the second prong.

Applying the third *Reynolds* prong, the military judge determined that the probative value of the three videos was not substantially outweighed by the danger of unfair prejudice to Appellant under Mil. R. Evid. 403. In making this

---

[18] The military judge instructed that the members must be convinced beyond a reasonable doubt that Appellant "knowingly and wrongfully" filmed AD's private area. The requirement for an appellant's conduct to be wrongful, i.e., "without legal justification or lawful authorization," is not an element listed in the *MCM*, but it is required by the statute. *Compare* Article 120c(a), UCMJ, 10 U.S.C. § 920c(a), *with MCM*, pt. IV, ¶ 45c.b.(2).

[19] The military judge instructed the members on the lesser offense.

determination, the military judge found the evidence was "appropriately tailored to prove the point without being unfairly prejudicial or needlessly cumulative."

The military judge correctly applied the third *Reynolds* prong. Consistent with his determination, the military judge gave the members an appropriate limiting instruction before the Prosecution published the three videos and again before closing arguments by counsel. The findings instruction allowed the members to consider evidence that Appellant may have recorded the three videos at issue, to "prove knowledge on the part of the accused that he knowingly and wrongfully filmed the private area of [AD]" and "to prove that the accused specifically intended to do the same." The military judge cautioned the members that they could not consider the three videos for any other purpose or conclude from that evidence that Appellant was a bad person who had general criminal tendencies and that he therefore committed any of the charged offenses. The members acknowledged understanding the limiting instruction. Thus, as to the third *Reynolds* prong, we find the military judge properly applied the Mil. R. Evid. 403 balancing test and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See Reynolds*, 29 M.J. at 109 (citation omitted).

We conclude that the military judge properly applied the *Reynolds* test and his ruling admitting the three uncharged videos under Mil. R. Evid. 404(b) was not a clear abuse of discretion. *See Morrison*, 52 M.J. at 122. Although we have concluded that the military judge abused his discretion in ruling that remarks made by counsel during opening statement can open the door to evidence in rebuttal, we have determined that this error did not have a "substantial influence on the findings" and was harmless as the military judge advanced a valid alternative basis for admitting the evidence.[20] *See United States v. McCollum*, 58 M.J. 323, 342–43 (C.A.A.F. 2003) (citations omitted) (applying four-part test in *United States v. Weeks*, 20 M.J. 22, 25 (C.M.A. 1985), to determine prejudice from the erroneous admission of evidence in findings); *see also United States v.*

---

[20] Importantly, the members were not informed that the three videos were introduced because the military judge found that senior defense counsel opened the door by his remarks in opening statement. The military judge's preliminary instructions stated that the members

> must determine whether the accused is guilty or not guilty based solely upon the evidence presented here in court and upon the instructions that I give you now and throughout this trial. Because you cannot properly make that determination until you have heard all the evidence and received all of the instructions, it is of vital importance that you keep an open mind throughout these proceedings until all the evidence has been presented and the instructions have been given.

*Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999) (evaluating prejudice from an erroneous ruling admitting evidence in rebuttal by weighing the four factors in *Weeks*, 20 M.J. at 25). Appellant was not unfairly prejudiced, because the uncharged acts of videorecording were not erroneously admitted. Accordingly, we hold that the military judge did not err in admitting evidence of Appellant's uncharged conduct in making surreptitious recordings of women for the limited purpose to prove elements of the charged indecent recording offense and the lesser included offense of attempt.

## B. Legal and Factual Sufficiency

Contrary to his pleas, the members found Appellant guilty of two specifications of obstruction of justice in violation of Article 134, UCMJ. On appeal, Appellant contends that the evidence supporting his conviction for Specification 1 of Charge II, an obstruction offense involving AT, is legally and factually insufficient.[21] We disagree.

### 1. Additional Background

Three days after Appellant's ex-girlfriend reported Appellant's conduct to AFOSI agents, Appellant's first sergeant escorted him to the AFOSI detachment for an interview, and Appellant learned that his conduct was the subject of an investigation. Meanwhile, AFOSI agents analyzed the images in their possession and made a list of investigative steps they needed to accomplish including identifying witnesses to interview.

About one month after AFOSI began its investigation, an agent spoke on the telephone with one of Appellant's female friends, AT, to set up an interview. The agent wanted to ask AT questions about a video of her that the agent believed Appellant had recorded. AT testified that she explained during the phone call that "there couldn't be a video" in which she and Appellant "were together" "other than [her] wedding." The agent clarified without elaborating that "it was a different video" and the agent needed her to verify that she was in the video. AT was confused but agreed to be interviewed.

Before the interview took place, AT told Appellant about the phone conversation and that an AFOSI agent wanted to ask her about a video he recorded

---

[21] Appellant casts his statement of the issue as, "Whether *Charge II* is legally and factually insufficient," and similarly contends that "the evidence supporting *Charge II* is both legally and factually insufficient." (Emphasis added). However, Appellant's declaration in support of his claim submitted under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), is more narrow, alleging that the evidence underlying his conviction for Specification 1 of Charge II is insufficient. Nonetheless, we find Appellant's conviction of Charge II and the specifications that are not challenged in his brief both legally and factually sufficient.

of her. Appellant reacted by asking AT if he could come to her home to talk in person, and she agreed to meet Appellant the next day. AT testified that Appellant's demeanor when he came to her home was "[s]ad, worried, [and] scared." Appellant explained that he and his girlfriend "were fighting" "and that there were things that she was trying to do to him to hurt him." AT testified that Appellant then "asked [AT] if he could hug [her] before he [told her] what he need[ed] to tell [her] because he [wa]s afraid [she] wouldn't want to be friends with him anymore once [she] found out" what he had done.

Appellant admitted to AT that he had hidden a video camera in her bedroom without her knowledge. AT sought details that Appellant either could not or would not provide. Appellant told AT that he could not remember when he placed the camera in her bedroom or exactly where he put it, but offered assurance that "it wasn't there anymore." Appellant told AT he "didn't remember anything, that he never saw the video, and that it was all [his girlfriend] making him do it." AT asked Appellant to show her the video, but "he said he didn't have it anymore." AT testified at Appellant's trial that she reacted "in shock," was "freaked out," and rushed Appellant out of her home.

The next day, Appellant and AT corresponded by sending text messages to each other's cell phones that the Prosecution admitted into evidence. Appellant texted that it would help him if AT told AFOSI agents that the recording he made in her bedroom was consensual, and "the best thing would be to say nothing at all." Appellant described the jeopardy he faced if AFOSI agents learned the truth. Appellant explained,

> I know I am not your favorite person probably ever again, but I talked to a lawyer and wanted to write you. He said I shouldn't have talked to you because if [AF]OSI had that information it will be used against me and I am looking at being kicked out of the military and [three] years in jail. He said he thinks he knows what they are trying to do and the second you say the recording is non-consensual my fate is sealed. If the recording was consensual and you did it to help me out because you knew [Appellant's girlfriend] was manipulating / blackmailing me then it would be beneficial.

In due course, AT met with AFOSI agents and recounted Appellant's admission to placing a video camera in her bedroom. AT permitted the agents to extract from her phone the text messages she exchanged with Appellant that were admitted at trial. Trial counsel asked AT, "If you would have told [AF]OSI that a recording of you in your bedroom was consensual, would that have been a lie?" AT answered, "Yes."

**2. Law**

As charged in Specification 1 of Charge II, Appellant was convicted of obstruction of justice, which required the Government to prove four elements beyond a reasonable doubt: (1) that Appellant wrongfully asked AT to refuse to talk to investigators and to provide false information to investigators; (2) Appellant did so in the case of himself against whom he had reason to believe there were or would be criminal proceedings pending; (3) the act was done with the intent to impede the due administration of justice; and (4) under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *See MCM*, pt. IV, ¶ 96.b. Service discrediting conduct is conduct which tends to "injure the reputation of" the service or "lower it in public esteem." *MCM*, pt. IV, ¶ 60.c.(3).

A Court of Criminal Appeals may affirm only such findings of guilty "as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "Article 66(c) requires the Courts of Criminal Appeals to conduct a de novo review of legal and factual sufficiency of the case." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (emphasis and citation omitted). Our assessment is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

 "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

### 3. Analysis

The evidence of record establishes that Appellant learned he was under investigation in April 2017 when his first sergeant escorted him to AFOSI. After AT told Appellant that AFOSI agents wanted to ask her questions about a video that Appellant recorded of her, Appellant went to AT's home and volunteered that he had placed a video camera in her bedroom which he later removed. The day after their meeting, Appellant texted AT that it would be "beneficial" to him if AT said the recording he made was consensual, although it would be best that she say "nothing at all."

At trial, Appellant defended against Specification 1 of Charge II by arguing that even if AT's testimony was true, the Prosecution failed to prove the offense of obstruction of justice beyond a reasonable doubt. Consistent with this strategy, trial defense counsel offered "no objection" to the text messages that AFOSI agents extracted from AT's cell phone and did not cross-examine AT when she testified.

On appeal, the focus of Appellant's challenge is different. Appellant attacks AT's veracity and the authenticity of the text messages and other communications between Appellant and AT, which Appellant contends for the first time were "clearly altered" and "falsified." Appellant also contends for the first time that AT's testimony was "influenced by discussions with other individuals related to the case," and that he could not have met AT at her home because an alibi witness would have placed him at another location on that day if the witness had been called to testify.

To the extent that Appellant cites information that was not introduced at trial for this court's determination of the factual and legal sufficiency of his conviction, this court cannot consider it. *See United States v. Reed*, 54 M.J. 37, 43–44 (C.A.A.F. 2000) (citations omitted) (explaining the "record" refers to matters introduced at trial, and matters outside the record may not be considered for factual or legal sufficiency on appeal). Thus, Appellant's outside-the-record assertions, particularly in regard to the defense of alibi, must be rejected.

We have considered Appellant's post-trial attacks on AT's veracity and the authenticity of the evidence and are not persuaded by Appellant's contentions. Appellant asserts AT somehow influenced the testimony of other witnesses, and that text messages between Appellant and AT that were introduced into evidence by the Prosecution were fabricated. But Appellant did not cross-examine AT at trial about these speculative and unfounded claims, and failed to raise the possibility that AT's communications with Appellant were fabricated or challenge their admissibility. No evidence produced at trial lends credence to Appellant's claims, *see Dykes*, 38 M.J. at 272, and the evidence of record does

not give a compelling reason to question AT's testimony or the authenticity of the text messages that were admitted without objection.

Viewing the evidence in the light most favorable to the Prosecution, we find that a rational factfinder could have found Appellant guilty of all the elements of obstruction of justice as charged in Specification 1 of Charge II beyond a reasonable doubt. Therefore, the evidence is legally sufficient to support Appellant's conviction. Having weighed the evidence in the record and made allowances for not having personally observed the witnesses, we also are convinced of Appellant's guilt beyond a reasonable doubt. Thus, we find Appellant's conviction is also factually sufficient.

## C. Search and Seizure of Appellant's Digital Media

On the morning of 16 May 2017, Appellant's home was searched pursuant to a warrant issued by a federal magistrate. AFOSI agents executed the search warrant at Appellant's duplex to collect his digital media and other items of evidence. Appellant did not move at trial to suppress the evidence that was seized or its fruits on any grounds. Nonetheless, trial defense counsel argued in findings that Appellant believed the search of his home was unlawful and gave that as a reason why the members should return a verdict of not guilty of obstruction of justice for when Appellant asked his neighbor to shut off the electricity to his home during the search.

On appeal, Appellant launches a broadside challenge to the search. He contends that the Government did not have probable cause to search any digital media other than his phone. He also contends that the affidavit on which the magistrate relied was stale, it failed to demonstrate probable cause to search for evidence of obstruction of justice, and that AFOSI agents deliberately misled the magistrate by recklessly misstating facts. Finally, Appellant contends that the search warrant was overly broad and amounted to a general warrant to unlawfully search Appellant's home.

### 1. Law

"Waiver can occur by either operation of law, or by the intentional relinquishment or abandonment of a known right." *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (internal quotation marks and citations omitted). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citations omitted). When there is waiver of an issue, that issue is extinguished and may not be raised on appeal. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citation omitted).

Mil. R. Evid. 311(d)(2)(A) requires the defense to make any motion to suppress or objection under this rule regarding evidence obtained from an unlawful search and seizure prior to the submission of a plea unless permitted by the military judge for good cause shown. "Failure to so move or object constitutes a waiver of the motion or objection." Mil. R. Evid. 311(d)(2)(A).

Two recent cases by the United States Court of Appeals for the Armed Forces (CAAF) addressed the waiver provision of Mil. R. Evid. 311(d)(2)(A). In *United States v. Robinson*, the CAAF found waiver when an appellant failed to challenge the scope of the appellant's consent to search during a motion to suppress. 77 M.J. 303, 307 (C.A.A.F. 2018). The CAAF found Mil. R. Evid. 311(d)(2)(A) "unambiguously establishes that failure to object is waiver, and it is not a rule that uses the term 'waiver' but actually means 'forfeiture.'" *Id.* (citing *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017)). Then, in *United States v. Smith*, the CAAF relied on its "unambiguous holding in *Robinson*" to "reiterate that failure to object under [Mil. R. Evid.] 311 constitutes waiver, not forfeiture." 78 M.J. 325, 326 (C.A.A.F. 2019) (citing *Robinson*, 77 M.J. at 307).

### 2. Analysis

Appellant's failure to object to or seek suppression of evidence that he contends was obtained from an unlawful search or seizure of his home waives the issue of the lawfulness of the search. Mil. R. Evid. 311(d)(2)(A); *Smith*, 78 M.J. at 326. And, we find no reason to pierce Appellant's waiver. *See United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018); *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (citation omitted) (addressing this court's responsibility to "assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error").

We decide to leave Appellant's waiver intact because we find no reason to conclude that Appellant's rights under the Fourth Amendment were violated. The record is not developed to address Appellant's contentions even if we pierced the waiver to consider them. *See United States v. Perkins*, 78 M.J. 381, 390 (C.A.A.F. 2019) (citation omitted) ("a particularized objection is necessary so that the government has the opportunity to present relevant evidence that might be reviewed on appeal"). Thus, we decline to grant relief.

### D. Spoliation of Evidence

Appellant contends that this court should set aside the findings because AFOSI agents directed witnesses to destroy evidence. For support, Appellant relies on testimony that the military judge received from Appellant's sister and his first sergeant on a motion to compel discovery. The witnesses testified about an email that included at least one image that was sent to them by Appellant's sister, and which they later deleted either at the direction of AFOSI

agents or with the agents' approval. The image, or a duplicate, was referenced in an affidavit that was used to obtain a search warrant for Appellant's home. Appellant contends that the direction given by the AFOSI agent to the witnesses to destroy "these potential photos and images prevented the Defense from obtaining access to possibly exculpatory evidence."[22] We are not persuaded that the actions of the AFOSI agents merit granting relief.

### 1. Additional Background

As part of a defense motion to compel discovery, Appellant sought any evidence of messages, images, or emails that Appellant's ex-girlfriend sent to Appellant's sister, which came into the possession of agents of the AFOSI.[23] One item in particular was a picture that Appellant's ex-girlfriend provided to AFOSI agents and facsimiles she emailed to Appellant's sister and the first sergeant. Appellant's ex-girlfriend related to the AFOSI agents that she found the image on Appellant's cell phone and had to take a photograph of the image using her own phone. The AFOSI case agent reviewed the picture and described it in his report:

> The review disclosed one photograph of a black in color cellular phone, which displayed nine graphic images on the screen of the photographed phone. The graphic images were of an individual, possibly a Caucasian female, dressed in a white or pink in color thigh high skirt. The female laid on a carpeted floor and faced away from the camera. Due to the photograph's resolution and position of the unidentified individual in the images, further identification of the individual and verification of age was not possible.

Appellant also sought any "evidence regarding recommended deletion," which we understand to mean that Appellant sought evidence that would substantiate witness testimony that an AFOSI agent instructed witnesses to destroy evidence of the image and the email communications by which Appellant's ex-girlfriend sent the image to others.

#### a. Testimony of Appellant's Sister

The Defense called Appellant's sister who testified about an email she received in April 2017 from Appellant's ex-girlfriend. The ex-girlfriend was con-

---

[22] Appellant declares that testimony established "that there were up close, higher quality images which could lead to identification of the individual in the photos or [their] age."

[23] Appellant's ex-girlfriend did not testify on the motion.

cerned about Appellant's daughter visiting Appellant during the summer. Appellant's sister testified that the ex-girlfriend believed that Appellant's home "was not a safe place for [the sister's] niece to be." Appellant's sister understood the purpose of the email was to enlist the sister's intervention to prevent Appellant's daughter from "being in that situation."

Included in the email were six to eight pictures that Appellant's ex-girlfriend said that she found on Appellant's media. The pictures showed what the ex-girlfriend believed was "an underage girl l[ ]ying on the floor." The girl "appeared to be sleeping," "was clothed," and was "l[ ]ying on her stomach wearing a skirt and the pictures appeared to be from the foot angled up." Appellant's sister testified that several of the pictures were duplicates and two of them depicted somebody holding a cell phone and images of the girl could be seen in a picture gallery on the cell phone that was being held. Appellant's sister explained that "four pictures were close-ups of those pictures that were displayed on the gallery picture," the pictures appeared to have been "taken in sequence so they were all very similar or the same pictures," and "[s]ome of them were close up."

Appellant's sister reached out to Appellant's ex-girlfriend and learned that she already reported Appellant's conduct to law enforcement and that an AFOSI investigation was underway. The ex-girlfriend provided Appellant's sister with the name and phone number of an AFOSI agent who was working the case. Appellant's sister called the agent to confirm what Appellant's ex-girlfriend related to her and also to confirm that the ex-girlfriend told the agent about the pictures. The AFOSI agent confirmed he "was already in receipt of these pictures" and "didn't need [her] to send them to him at that time," explaining "he did not want to continue to send these pictures back and forth over the [I]nternet."

Appellant's sister reached out to the AFOSI a second time after Appellant learned about the email she had received from his ex-girlfriend and Appellant wanted to have it. The agent suggested that Appellant's sister should contact Appellant's first sergeant, which she did. Appellant's sister also expressed concern to the AFOSI agent that the email she received had been sent to her work email and she was obligated to report it to her employer. The AFOSI agent indicated the email was not needed and could be deleted. Ultimately, the email with the attached pictures was deleted from her employer's email server.

### b. Testimony of Appellant's First Sergeant

The Defense called Appellant's first sergeant who testified about an email he received in April 2017 that had been sent by Appellant's ex-girlfriend. The email stated that Appellant had physically and sexually assaulted her and included a picture of an unidentified female lying on the floor in a skirt, which

the ex-girlfriend said she had obtained from Appellant's cell phone. The first sergeant immediately contacted AFOSI, spoke to the case agent, and followed the agent's direction to send him the email with the attached picture. Several weeks later, the first sergeant learned that AFOSI agents had investigated the picture because there was a question whether it depicted Appellant's daughter or a friend of his daughter. An AFOSI agent explained their initial suspicions "had not come to fruition and it [was] not advisable for [the first sergeant] to have that [email] on [a] government computer and to delete it," which he did.

### c. Testimony of AFOSI Agents

Two AFOSI agents testified about the picture of a female lying on the floor that agents recalled receiving from either Appellant's first sergeant or ex-girlfriend. The agents spoke to Appellant's ex-girlfriend who believed the picture depicted an adolescent female and expressed concern that Appellant had been taking pictures of underage girls. She further claimed that the female looked like Appellant's neighbor, and that the rug on which she lay was in Appellant's home. The picture was among the information that one of the AFOSI agents included in his statement of probable cause to search Appellant's home. One agent testified about the effort that was made to identify the female in the picture, which was unsuccessful. This included speaking to Appellant's neighbors, including the parents of the female whom Appellant's ex-girlfriend believed was depicted in the picture. The neighbor "strongly believed it was not their daughter," as the agent recounted.

Both agents either stated or implied in their testimony that they thought it unnecessary to collect copies of duplicate images that they determined were inconsequential to their investigation, if such duplicates were even "evidence." One agent explained, "It's a duplicate image so we would not have to take that [as evidence]." Contrary to the testimony of Appellant's sister and the first sergeant, neither agent testified that Appellant's sister or the first sergeant were told to delete duplicate images or emails that agents of the AFOSI already received from a witness. One AFOSI agent testified that the digital images Appellant's ex-girlfriend provided to other individuals, who in turn provided them to AFOSI, were not in the case file, and the agent no longer had access to his email archive or the tablet he used when he served as the case agent.

### d. Motion and Ruling

At trial, the Defense sought a remedy for what was "apparently some direction [by AFOSI agents] to either not retain or alternately affirmative direction to destroy information that was not kept by investigative agencies." The military judge found evidence that "communications happened is there," but the emails had not been produced. The military judge ordered the Government to produce evidence in any form responsive to the defense request, but to the

extent the Government already complied and provided what still existed, the military judge denied the motion to compel discovery. The Defense made no further requests for relief related to this evidence.

**2. Law**

Although a party is "entitled to the production of evidence which is relevant and necessary," R.C.M. 703(f)(1), "a party is not entitled to production of evidence which is destroyed, lost, or otherwise not subject to compulsory process." R.C.M. 703(f)(2). Evidence that meets this criteria but cannot be produced may result in a continuance or abatement of the proceedings if the evidence is necessary to ensure a fair trial:

> if such evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings . . . .

*Id.* The rule does not require the accused to demonstrate bad faith on the part of the Government, something an accused may have to demonstrate to obtain relief under Article 46, UCMJ, 10 U.S.C. § 846, or the Constitution. *United States v. Terry*, 66 M.J. 514, 518 (A.F. Ct. Crim. App. 2008). R.C.M. 703 therefore represents "the President going even further than the Constitution and the Uniform Code in providing a safeguard for military personnel." *United States v. Manuel*, 43 M.J. 282, 288 (C.A.A.F. 1995).

**3. Analysis**

Appellant contends we should review for plain error, and the Government counters that Appellant waived any issue regarding the allegedly lost or destroyed images that AFOSI agents initially received from Appellant's ex-girlfriend. Appellant never moved for an abatement of the proceedings as part of his motion to compel, and arguably waived his claim that this court set aside the findings on appeal. However, under this court's "affirmative obligation to ensure that the findings and sentence in each such case are 'correct in law and fact . . . and should be approved,'" *Chin*, 75 M.J. at 223 (alteration in original) (quoting *United States v. Miller*, 62 M.J. 471, 472 (C.A.A.F. 2006)), we assume without deciding that Appellant's contention is not waived. Considering the very serious allegation that the Government destroyed evidence, we examined the record in great detail to better understand Appellant's contention. In doing so, we reach the conclusion that Appellant's spoliation claim lacks merit.

The record does not support the claim that the Government failed to produce exculpatory evidence as required by Article 46, UCMJ, *Brady v. Maryland*, 373 U.S. 83 (1963), and subsequent cases. The images that Appellant's

ex-girlfriend provided to witnesses were the same images already in the possession of AFOSI agents, and a copy had been provided to Appellant as part of discovery and is included in the record. None of the images in the Government's possession or the description of duplicates were shown to be "relevant and necessary," R.C.M. 703(f)(1), much less exculpatory or that they could contribute to Appellant's defense in any meaningful way. Thus, as regards the images, Appellant has not shown that there was "no adequate substitute" for the evidence as required by R.C.M. 703(f)(2).

We also examine the means by which the images were relayed from Appellant's ex-girlfriend to witnesses, that is, testimony of email communications that witnesses later deleted either at the direction of AFOSI agents or with the agents' approval. We find no basis in the record to support Appellant's claim that the images and emails deprived Appellant of "possibly exculpatory evidence." At most, the missing "evidence" was a dead-end lead because AFOSI agents could not determine the identity or the age of the female who was depicted in the images. Neither the image nor the testimony of Appellant's ex-girlfriend on this matter was received in evidence in the Prosecution's case on the merits. Thus, Appellant has made no showing the missing communications and duplicate images were of "such central importance to an issue that is essential to a fair trial" that the findings should be set aside. *See* R.C.M. 703(f)(2).

## E. Allegations of Prosecutorial Misconduct

Included among Appellant's claims of improper government conduct are claims of prosecutorial misconduct. Appellant contends that the conduct of trial counsel denied him a fair trial. We are not persuaded.

### 1. Additional Background

Appellant asserts three bases for this court finding prosecutorial misconduct. First, Appellant claims that trial counsel improperly proceeded with the case "despite clear and convincing evidence" that AFOSI agents "instructed witnesses to delete[ ] crucial evidence and then used that same evidence when seeking a search warrant." Second, Appellant claims that "[m]ost of the witnesses did not intend to participate in the trial" but did so only because of "unethical tactics of the prosecution." Appellant explains that the "Prosecution sent notices to numerous witnesses that [Appellant] was being charged with possession of child pornography" and that "[t]here is no reasonable reason to provide such information to prospective witnesses." He further explains, "The only logical reason for such conduct was to improperly inflame potential witnesses into testifying harshly against [him]." Third, Appellant claims that trial counsel "repeatedly made inappropriate comments in front of the panel. On numerous occasions the military judge had to stop proceedings and excuse the jury to conduct an Article 39(a)[, UCMJ,] session, but only after the panel

heard the inappropriate comments." Appellant alleges that "[t]he repeated comments throughout the trial could have reasonably created a negative perception of [Appellant]."

**2. Law**

Trial counsel have a "duty to refrain from improper methods calculated to produce a wrongful conviction." *See United States v. Andrews*, 77 M.J. 393, 402 (C.A.A.F. 2018) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). "Prosecutorial misconduct is 'action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon.'" *United States v. Pabelona*, 76 M.J. 9, 11–12 (C.A.A.F. 2017) (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)). It is described as "behavior by the prosecuting attorney that 'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *Id.* (alteration in original) (quoting *Berger*, 295 U.S. at 84).

We review claims of prosecutorial misconduct de novo, but when an appellant raises such claims for the first time on appeal we review for plain error. *See United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citing *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018)). "The burden of proof under plain error review is on the appellant." *Id.* (quoting *Andrews*, 77 M.J. at 398). "Plain error occurs when (1) there is error, (2) the error is clear or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Id.* (quoting *Andrews*, 77 M.J. at 401). If prosecutorial misconduct occurred, then we must determine whether "the legal norm violated . . . actually impacted on a substantial right of an accused (i.e., resulted in prejudice)." *United States v. Golston*, 53 M.J. 61, 64 (C.A.A.F. 2000) (quoting *Meek*, 44 M.J. at 5).

**3. Analysis**

As to Appellant's first contention—that trial counsel improperly proceeded with his case all the while knowing that evidence had been deleted and the search of his home was based on an affidavit from unprincipled AFOSI agents—we note that Appellant recasts his claim that evidence obtained from the search of his home should have been suppressed, as prosecutorial misconduct. Whereas Appellant waived any issue related to the search of his home as discussed *supra*, we assume that Appellant's claim of prosecutorial misconduct—to the extent that it depends on his claim of pretrial misconduct by investigators—is not waived by Appellant's failure to move to suppress the search on any grounds. In the record before us, we find that the images witnesses deleted were duplicates of evidence that AFOSI agents had already obtained after Appellant's ex-girlfriend had brought images to AFOSI, including

images the agents extracted from her cell phone that originated from Appellant's media.[24] We reject Appellant's sweeping assertion of the "existence of multiple photos and images" that were "*probable* exculpatory evidence" as unsupported by the record, whether cast as misconduct by AFOSI agents or recast as prosecutorial misconduct.

We similarly reject Appellant's second[25] and third contentions that trial counsel acted improperly in their interactions with prospective witnesses and repeatedly made inappropriate comments in front of the members, respectively, as unsupported by the record. Appellant neither identifies a particular trial counsel or witness, nor legal norm or standard violated.[26] Appellant points to no specific comment from a trial counsel in the record, or whether his counsel objected, or how the military judge abused his discretion in any curative instruction he may have given or failed to give.

As to each of the three contentions, we find Appellant fails in his burden to demonstrate clear or obvious error that resulted in material prejudice to a substantial right of Appellant under plain error review. *See Voorhees*, 79 M.J. at 9. For similar reasons we decline to order a post-trial evidentiary hearing as there are no "substantial unresolved questions" that require clarification. *Dykes*, 38 M.J. at 271 (C.M.A. 1993) (citations omitted) (holding that post-trial factfinding before a military judge at the trial level is necessary when there are substantial unresolved questions concerning an appellant's post-trial claims of unlawful command influence).

---

[24] As discussed previously, AFOSI agents also obtained an image from Appellant's sister that originated in Appellant's media that an agent testified "had come full circle" after "that image had been sent to [Appellant's sister] or someone else."

[25] The Government contends in its brief that we should find Appellant waived review of Appellant's second claim because "Appellant declined his opportunity to seek relief through a motion at trial and to confront the witnesses against him in cross-examination on this matter." However we are mindful of our superior court's holding in *United States v. Andrews*, 77 M.J. 393, 399 (C.A.A.F. 2018), "to continue to review unobjected to prosecutorial misconduct . . . for plain error." Thus, we decline to find Appellant intentionally abandoned a known right and waived this issue.

[26] We find the applicable standards from the Air Force Rules of Professional Conduct (AFRPC) are not violated. It is "professional misconduct when a lawyer engage[s] in conduct involving dishonesty, fraud, deceit, or misrepresentation; [or] engage[s] in conduct that is prejudicial to the administration of justice." Air Force Instruction 51-110, *Professional Responsibility Program*, Attachment 2 (AFRPC), Rules 8.4(c), (d) (5 Aug. 2014).

**F. Allegation that AFOSI Agents Unlawfully Influenced Witnesses**

Appellant's post-trial declaration details harassment and intimidation he alleges was directed at the Prosecution's witnesses during the AFOSI investigation. Appellant contends that AFOSI agents' handling of Appellant's case and treatment of potential witnesses raises substantial questions regarding the fairness of the court-martial. Appellant did not assert these claims or move for relief at trial. He raises them for the first time on appeal. We are not persuaded and find no merit to his claims.

**1. Additional Background**

Characterizing the actions of unidentified AFOSI agents as "witness tampering," Appellant claims agents "repeatedly told witnesses what they were going to see before the witnesses saw the evidence." As an example, Appellant claims agents "called the owners of the home in which three of the indecent videos were recorded and told the owners that the agents needed to show them the videos that [Appellant] recorded despite the fact that the videos did not show who recorded them." Appellant also claims agents made comments to witnesses to include that Appellant is a "predator," and that he "definitely abused women."

Appellant further contends that AFOSI agents "relentlessly harassed witnesses through repeated calls, texts, and uninvited in-person visits to their homes." He explains that agents "constantly called and texted" Appellant's ex-spouse even though "she did not want to talk to AFOSI or participate in any court proceedings." Only after agents made "repeated unwanted visits to her home" did she relent and talk to the agents. Appellant claims that another witness "arrived home to notes on her door no less than three time[s] and did not want to talk to AFOSI" agents. He claims that after agents were finally able to contact her when she was home, they told her that "she would be complicit" in Appellant's "behavior if she did not testify against [Appellant.]" Appellant claims agents "attempted to coerce another witness," to "provid[e] her social security number for a background check," and when she refused, the agents told her that Appellant "was definitely guilty and they needed her help or she would be at fault like other witnesses who refused to cooperate."

### 2. Analysis of Applicable Law

#### *a. Appellant's Contentions*

Observing that an Airman is entitled to a fair trial, Appellant's counsel contends on Appellant's behalf[27] that "law enforcement's handling of Appellant's case and treatment of potential witnesses raises substantial questions" about the fairness of his trial. Citing the Sixth Amendment; 18 U.S.C. §§ 241, 242; and 34 U.S.C. § 12601, Appellant's counsel observes that federal law provides criminal and civil penalties for police misconduct that deprives a person of his constitutional rights. We briefly examine each federal provision in turn as sources of authority, and find none is suitable to resolve Appellant's claim that this court should dismiss the charges and specifications because of alleged misconduct by AFOSI agents whom Appellant has not identified.

The United States Supreme Court has limited application of the Sixth Amendment to government action that occurs after the initiation of adverse criminal proceedings. *United States v. Marion*, 404 U.S. 307, 313 (1971) ("On its face, the protection of the [Sixth] Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution."); *United States v. Reed*, 41 M.J. 449, 451 (C.A.A.F. 1995) ("Sixth Amendment speedy-trial protection does not apply to pre-accusation delays when there has been no restraint.") (citations omitted)). Although "[t]here is no clear analog to the 'formal indictment or information' in the Armed Forces . . . preferral or referral of charges or pretrial restraint approach being analogous." *United States v. Vogan*, 35 M.J. 32, 33 (C.M.A. 1992) (quoting *Marion*, 404 U.S. at 320). In the military, the Sixth Amendment right to counsel attaches when charges are preferred, *United States v. Wattenbarger*, 21 M.J. 41, 43 (C.M.A. 1985) (citations omitted), and Sixth Amendment speedy trial protections attach upon preferral of charges or the imposition of pretrial restraint. *United States v. Danylo*, 73 M.J. 183, 186 (C.A.A.F. 2014) (citing *Vogan*, 35 M.J. at 33). In the case before us, there is no claim that Appellant was restrained or that the conduct of AFOSI agents occurred after preferral of charges. Thus, Appellant's reliance on the Sixth Amendment is inapt.

Appellant also bases his claim on two statutes that set forth substantive criminal provisions: 18 U.S.C. § 241 (criminalizing conspiracy to commit civil-rights violations), and 18 U.S.C. § 242 (deprivation of constitutional rights under color of law). However, neither statute expressly allows dismissal of

---

[27] Appellant's appellate defense counsel submitted a brief in support of Appellant's *Grostefon* issues as allowed for by the Joint Rules for Appellate Procedure for Courts of Criminal Appeals and this court's Rules of Practice and Procedure. *See* Jt. Ct. Crim. App. R. 18(b); A.F. Ct. Crim. App. R. 18.2.

charges as a remedy, and it would be an issue of first impression in our jurisdiction if we so found. Finally, Appellant cites to 34 U.S.C. § 12601, but that statute concerns the "administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." Section 12601 has no applicability here.

### b. Government's Answer

The Government neither agrees with Appellant that any of the federal laws he cites is suitable to address Appellant's claims, nor counters that Appellant's reliance on them is misplaced. Instead, it urges this court to either find waiver, or examine Appellant's contentions for unlawful influence and find that Appellant fails to state a claim for relief.

As to waiver, the Government claims that "[t]o the extent Appellant asserts AFOSI[ agents'] alleged tactics somehow interfered with [Appellant's] due process at trial," we should find waiver because "Appellant intentionally abandoned a known right by declining his opportunity to seek relief through a motion at trial and in declining to confront the witnesses against him on this matter." In the alternative, and citing *United States v. Boyce*, 76 M.J. 242 (C.A.A.F. 2017), the Government claims "[t]o the extent Appellant's argument" can be read that "AFOSI agents sought to unlawfully influence witnesses," we should examine their conduct for "an improper manipulation of the criminal justice process which negatively affects the fair handling and/or disposition of a case." *Id.* at 247 (citations omitted).

The prohibition against unlawful influence that our superior court addressed in *Boyce* and other cases arises from Article 37(a), UCMJ, which provides in relevant part that:

> [n]o person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts.

10 U.S.C. § 837(a); *see also* R.C.M. 104(a)(2) (substituting "code" for "chapter," and "such authority's judicial acts" for "his judicial acts").

The CAAF evaluates claims of unlawful influence from non-command sources by applying the same test used to evaluate "abuses perpetrated by those in command or those acting with the mantle of command authority." *United States v. Barry*, 78 M.J. 70, 76–77 (C.A.A.F. 2018). Our superior court has distinguished between unlawful influence in "the accusatorial process and the adjudicative stage, that is, the difference between preferral, forwarding,

referral, and the adjudicative process, including interference with witnesses, judges, members, and counsel." *United States v. Weasler*, 43 M.J. 15, 17–18 (C.A.A.F. 1995) (footnotes and citations omitted).

Allegations of unlawful influence are reviewed de novo. *Barry*, 78 M.J. at 77 (citing *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013)). "In order to succeed on appeal, the accused must establish: (1) facts, which if true, constitute unlawful influence; (2) unfairness in the court-martial proceedings (i.e., prejudice to the accused); and (3) that the unlawful influence caused that unfairness." *Id.* (citing *Boyce*, 76 M.J. at 248). Though the burden of this threshold showing on an accused is low, the evidence presented must consist of more than "mere allegation or speculation." *Salyer*, 72 M.J. at 423 (citation omitted). Once an appellant meets the initial burden of this threshold showing of unlawful influence, "the burden shifts to the government to rebut the allegation by persuading the [c]ourt beyond a reasonable doubt that: (1) the predicate facts do not exist; (2) the facts do not constitute unlawful influence; or (3) the unlawful influence did not affect the findings or sentence." *Barry*, 78 M.J. at 77 (footnote omitted) (citing *Salyer*, 72 M.J. at 423).

Unlike actual unlawful influence, a meritorious claim of an appearance of unlawful influence does not require prejudice to an accused. *Boyce*, 76 M.J. at 248 (footnote omitted) (evaluating unlawful command influence). *Contra* Article 59(a), UCMJ, 10 U.S.C. § 859(a) (conditioning appellate relief to material prejudice to a substantial right of an accused); *see Boyce*, 76 M.J. at 256 (Ryan, J., dissenting).

 "[W]hen an appellant asserts there was an appearance of unlawful command influence[,] [t]he appellant initially must show 'some evidence' that unlawful command influence occurred." *Id.* at 249 (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)) (additional citation omitted). For purposes of this appeal, we assume the same standard applies to an appearance of unlawful influence from non-command sources that is raised for the first time on appeal. In such cases, this initial showing would require an appellant to demonstrate:

> (a) facts, which if true, constitute unlawful command influence; and (b) this unlawful command influence placed an intolerable strain on the public's perception of the military justice system because an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding.

*Id.* (internal quotation marks and citation omitted). "[S]ome evidence of an appearance of unlawful command influence" exists when "it ha[s] the potential to appear to coerce or . . . influence the outcome" of a court-martial. *United States*

*v. Bergdahl*, 80 M.J. 230, 236 (C.A.A.F. 2020) ((internal quotations marks omitted) (omission in original) (citing *Boyce*, 76 M.J. at 249, 253).

"Once an appellant presents 'some evidence' of unlawful command influence, the burden then shifts to the government to. . . . prov[e] beyond a reasonable doubt that either the predicate facts proffered by the appellant do not exist, or the facts as presented do not constitute unlawful command influence." *Boyce*, 76 M.J. at 249 (quoting *Salyer*, 72 M.J. at 423) (additional citation omitted). If the Government fails to rebut the appellant's factual showing, it may still prevail if it proves beyond a reasonable doubt that the unlawful influence "did not place an intolerable strain upon the public's perception of the military justice system and that an objective, disinterested observer, fully informed of all the facts and circumstances, would [*not*] harbor a significant doubt about the fairness of the proceeding." *Id.* at 249–50 (alteration in original) (internal quotation marks omitted) (quoting *Salyer*, 72 M.J. at 423).

### c. Due Process Clause of the Fifth Amendment

To warrant dismissal of charges, the Government's conduct must be so outrageous, fundamentally unfair, and shocking to the universal sense of justice that prosecution is prohibited by the Due Process Clause of the Fifth Amendment.[28] *United States v. Russell*, 411 U.S. 423, 431 (1973); *United States v. LeMaster*, 40 M.J. 178, 180 (C.M.A. 1994). We examine the totality of the circumstances to determine whether the conduct of government agents reaches a level of outrageousness that warrants a dismissal of charges. *United States v. Bell*, 38 M.J. 358, 373 (C.M.A. 1993) (citing *United States v. Bogart,* 783 F.2d 1428, 1438 (9th Cir. 1986)).

### 3. Analysis of Appellant's Claims

At the outset, we note that Appellant's claims of witness tampering relate to witnesses called by the Prosecution and not testimony or other evidence that Appellant sought in his own defense. "Several legal norms are violated when a trial counsel attempts to or unlawfully dissuades a defense witness from testifying at a court-martial." *United States v. Edmond*, 63 M.J. 343, 348 (C.A.A.F. 2006) (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)). No specific claim is made that investigators impeded Appellant's right to call witnesses or present other evidence at his trial.[29] Instead, Appellant declares that one or more AFOSI agents unfairly influenced witnesses to provide evidence against

---

[28] U.S. CONST. amend. V.

[29] Threats or intimidation that dissuade a potential defense witness from testifying constitute a violation of the defendant's Fifth Amendment right to due process of law and his Sixth Amendment right to compulsory process for obtaining witnesses in his favor. *Webb v. Texas*, 409 U.S. 95, 98 (1972).

him, and intimates that the testimony of witnesses and their indifference to cooperating with the Government changed as a result of their treatment.

The essence of Appellant's claims is that unlawful government conduct induced reluctant witnesses to cooperate, and Appellant's convictions and sentence were the result. We reviewed the record of trial as if this issue was not waived by Appellant declining to confront the AFOSI agents on this matter at a pretrial hearing or on the merits. Additionally, on this record, we decline to order a post-trial evidentiary hearing as there are no "substantial unresolved questions" that require clarification. *Dykes*, 38 M.J. at 271 (citations omitted); *see also United States v. Ginn*, 47 M.J. 236, 238 (C.A.A.F. 1997) (holding a Court of Criminal Appeals errs "by making findings of facts partially based on post-trial submissions"). A post-trial evidentiary hearing "is not required in any case simply because an affidavit is submitted by an appellant." *Ginn*, 47 M.J. at 248.

### a. Alleged Unlawful Influence

Appellant claims AFOSI agents sought to unlawfully influence witnesses, which ostensibly raises the specter of unlawful influence in the adjudicative stage of his court-martial. We agree with the Government that Appellant has not made an initial showing of the low threshold of "some evidence" to support a collateral claim of actual or apparent unlawful influence. Utilizing our fact-finding powers authorized by Article 66(c), UCMJ,[30] we find no discernable evidence of witness tampering, much less reason to believe any external influence caused unfairness at Appellant's court-martial. *See Barry*, 78 M.J. at 77.

We begin our review with the Government's stance that Appellant's allegations do not amount to "some evidence" of unlawful influence. We have not discovered any authority that clearly defines the parameters of extending the provisions of Article 37, UCMJ, 10 U.S.C. § 837, to the conduct of government law enforcement agents in the investigative stage of a criminal proceeding. *But cf. Bergdahl*, 80 M.J. at 239 (finding "no appearance of unlawful command influence during the investigation and preferral stages"). We also find no authority that would restrict its application. Nonetheless, there is no evidence that AFOSI agents influenced any witness or abandoned their duty to conduct an independent investigation of Appellant's conduct. In this regard, we find no evidence of "an improper manipulation of the criminal justice process which negatively affect[ed] the fair handling and/or disposition of [Appellant's] case."

---

[30] Among the express powers given to this court in Article 66(c), UCMJ, "[i]n considering the record," is to "weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact."

*Boyce*, 76 M.J. at 247 (citing *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)) (other citations omitted).

"[S]ome evidence" of unlawful command influence requires more than a mere allegation or speculation. *See United States v. Dugan*, 58 M.J. 253, 258 (C.A.A.F. 2003) (citation omitted). If a post-trial declaration "does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis." *Ginn*, 47 M.J. at 248. In this regard, Appellant's post-trial declaration is replete with conclusory assumptions of wrongdoing and prejudice, which are markedly distinguishable from either an irrefutable incident on the one hand, or personal knowledge of a specific event on the other. We decline to accept Appellant's opinion of the actions and motivations of the AFOSI agents who investigated the case as our own under this court's Article 66, UCMJ, 10 U.S.C. § 866, factfinding authority, or rely on them to order a post-trial evidentiary hearing.

Even if we were to accept Appellant's speculative and conclusory claims as true, we find the contention that the conduct of the AFOSI agents affected the adjudicative stage of his court-martial is tenuous. We reach this conclusion after again examining the record. Conspicuously absent is any indication that a witness felt influenced by external pressure from investigators or that AFOSI agents told witnesses that Appellant was a predator or abused women as he claims they did in his declaration. For instance, Appellant did not challenge testimony or defend the case on grounds that witnesses' interviews were suggestive, or that agents harassed witnesses or pressured them to give false evidence as may have been elicited in a pretrial motion or on cross-examination in the Government's case. The inference to be drawn from the record is that either AFOSI agents did not conduct themselves as Appellant claims they did, or that trial defense counsel concluded that their conduct was not significant enough to move for relief or be a viable defense. On this record we cannot find that the actions of investigators had potential to appear to coerce or influence the outcome of the court-martial in violation of Article 37, UCMJ. *See Bergdahl*, 80 M.J. at 236.

Finally, even if we were to assume that the conduct of one or more AFOSI agents amounted to some evidence of unlawful influence, we are convinced beyond a reasonable doubt that the predicate facts proffered by Appellant do not constitute unlawful influence. *Boyce*, 76 M.J. at 249. We are similarly convinced there is no evidence that the actions underlying the claimed influence was prejudicial to Appellant or that a fully informed, disinterested, objective observer would doubt the fairness of Appellant's court-martial. *See Boyce*, 76 M.J. at 249–50 (citation omitted). Although an AFOSI agent could conceivably act with the mantle of command authority, in this regard the record is barren

of any indication that an AFOSI agent did.[31] *See Barry*, 78 M.J. at 76 n.3 (mantle of command authority "may be a relevant factor for determining whether there is a violation of Article 37, UCMJ"). Appellant fails to distinguish between diligent law enforcement efforts meant to reach reluctant potential witnesses and unlawful police tactics that compel involuntary or false testimony. And, for the most part, the testimony of victims and witnesses chiefly served to verify evidence that the Prosecution had little difficulty authenticating. This included indecent recordings Appellant made of the private areas of four women, text messages that proved obstruction of justice, and images of child pornography that were found on Appellant's media.

Appellant is not entitled to relief simply because AFOSI agents were able to reach witnesses who provided incriminating evidence in their investigation and at trial. To the extent Appellant's argument can be read as alleging unlawful influence on the part of AFOSI agents as the Government contends that it could, we find that Appellant's claim has no merit.

### b. Due Process

We also reviewed the record for evidence that the conduct Appellant attributes to AFOSI agents was so outrageous, fundamentally unfair, and shocking to the universal sense of justice that prosecution is prohibited by the Due Process Clause of the Fifth Amendment. *See Russell*, 411 U.S. at 431. While the line between acceptable tactics by government agents and outrageous behavior is often difficult to draw, *LeMaster*, 40 M.J. at 181, we find it not so troublesome to discern here. Using a totality of the circumstances test, *Bell*, 38 M.J. at 373, the allegations have questionable factual support, and the allegations, even if true, fall far short of the "outrageousness" contemplated by our superior courts.

We have examined the entire record, and find the facts do not support a claim that the conduct Appellant describes was such outrageous behavior that, "reversal would be required on due process grounds." *United States v. Vanzandt*, 14 M.J. 332, 345 (C.M.A. 1982) (citing *Hampton v. United States*, 425 U.S. 484 (1976)). There is simply no evidence in the record that AFOSI

---

[31] The commander of the Air Force Office of Special Investigations (AFOSI/CC) has "independent execution authority" "relating to military criminal investigations" and reports to the Secretary of the Air Force Inspector General (SAF/IG). HAF Mission Directive 1-20, *The Inspector General*, ¶¶ 3.3, A1.29 (7 May 2015); Air Force Mission Directive 39, *Air Force Office of Special Investigations (AFOSI)*, ¶¶ 1, 2.1 (1 Nov. 1995) (AFOSI/CC reports to SAF/IG) (currently described in Air Force Mission Directive 39, ¶ 2.1 (14 Apr. 2020)) (AFOSI/CC "[e]xercises command authority over all AFOSI assigned personnel, facilities, property, and funds, and has the independent authority, subject to [Secretary of the Air Force] oversight through SAF/IG, within the AF to initiate and conduct criminal investigations . . . .").

agents unlawfully influenced prosecution witnesses through harassment or intimidation, or otherwise violated rights, guarantees, and protections afforded a servicemember by the Fifth Amendment when he or she is the subject of a criminal investigation by the Government.

## G. Allegations of Ineffective Assistance of Counsel

Appellant's declaration alleges that he was denied effective assistance of counsel under the Sixth Amendment. Pursuant to *Grostefon*, Appellant personally requests this court to consider four deficiencies in the performance of trial defense counsel. Appellant claims his counsel failed to properly investigate his case; challenge the Prosecution's digital evidence; file a motion to suppress all digital evidence obtained in violation of the Fourth Amendment; and include alibi evidence in his clemency submission to the convening authority.

### 1. Law

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)).

Allegations of ineffective assistance of counsel are reviewed de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). "To prevail on an ineffective assistance claim, the appellant bears the burden of proving that the performance of defense counsel was deficient" and that this deficiency resulted in prejudice. *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland*, 466 U.S. at 698). Accordingly, we consider "(1) whether counsel's performance fell below an objective standard of reasonableness, and (2) if so, whether, but for the deficiency, the result would have been different." *United States v. Gutierrez*, 66 M.J. 329, 331 (C.A.A.F. 2008) (citations omitted).

When evaluating the performance of counsel, we employ a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Since counsel are presumed competent, an appellant must rebut this presumption by showing specific errors that were unreasonable under prevailing professional norms. *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987) (citation omitted). In effect, this requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Dewrell*, 55 M.J. 131, 133 (C.A.A.F. 2001) (citations omitted). Failure to pursue a particular legal claim, however, is not necessarily

deficient conduct by counsel. "If that claim is not shown to have a reasonable probability of being found meritorious as a matter of law and fact, the failure to pursue it is not error and certainly not ineffective assistance of counsel." *United States v. Terlep*, 57 M.J. 344, 349 (C.A.A.F. 2002) (citation omitted).

### 2. Analysis

In response to Appellant's claims, we ordered and received declarations from both trial defense counsel[32] which refute Appellant's claims and are generally consistent. We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes and are convinced such a hearing is unnecessary. *See Ginn*, 47 M.J. at 248; *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). Considering these declarations along with Appellant's, we conclude that Appellant has not overcome the presumption of competence of his trial defense counsel. We briefly examine each allegation in turn.

Appellant's claim that his counsel did not adequately investigate his case largely focuses on an alibi witness that Appellant alleges would have resulted in his acquittal of the obstruction of justice offense involving AT if this witness had testified. More generally, Appellant claims this witness "was the greatest source of information regarding [his] whereabouts, actions, and alibis[,] however, [trial] defense counsel did not interview her." Appellant's trial defense counsel not only refute this claim, but also explain in some detail that they regularly spoke with the witness when she attended trial and questioned her about witnesses in the case. Trial defense counsel interviewed numerous witnesses and Appellant, but no information they received raised the possibility of alibi as a defense. Appellant has not shown that his counsel were deficient.

Appellant claims that his counsel were ineffective because they failed to challenge the authenticity of messages and emails that Appellant claims were the result of spoofing, which is the act of disguising the source of a communication. Appellant's counsel explain that they explored this possibility with their digital forensics expert consultant but concluded that this theory was not supported by any of the evidence or analysis, and consequently, was not a viable defense. We find counsel's performance was not deficient.

Appellant's counsel explain that they did not challenge the search and seizure of digital evidence obtained from Appellant's home because the warrant

---

[32] We considered the declarations to resolve this issue. *See Jessie*, 79 M.J. at 442 (observing a Court of Criminal Appeals is allowed to accept affidavits "when necessary for resolving claims of ineffective assistance of trial defense counsel . . . when those claims and issues are raised by the record but are not fully resolvable by the materials in the record"). Our consideration is limited to determining whether a factfinding hearing or other appellate relief is warranted. *United States v. Ginn*, 47 M.J. 236, 238 (C.A.A.F. 1997) (citations omitted).

was substantiated with information that Appellant's ex-girlfriend provided to AFOSI agents, which she obtained when she lived with Appellant for a lengthy period of time and had access to his devices. Counsel determined the search warrant was lawful or at least conducted in good faith. Thus, we determine that counsel were not deficient in refraining from filing a motion to suppress evidence obtained from the search of Appellant's home.

Appellant's counsel explain that they did not include Appellant's alleged alibi in his clemency submission to the convening authority because it conflicted with facts they uncovered in the case. Appellant claims he could not have been at AT's house as she had claimed because he was with the alibi witness. However, counsel discovered that AT's mother was at AT's home at the time of Appellant's visit and recalled AT "being very upset directly following the conversation." Counsel also understood that Appellant was not in a relationship with this witness at the time of the visit, which cast doubt on his alibi. Thus, counsel's decision to avoid raising a possible defense that would invite greater scrutiny of Appellant's conduct was not deficient.

## H. Timeliness of Appellate Review

Although not raised by Appellant, we consider the issue of timely appellate review. We examine the circumstances of the delay and determine if Appellant suffered prejudice in our analysis.

### 1. Law

Whether an appellant has been deprived of his due process right to timely appellate review, and whether constitutional error is harmless beyond a reasonable doubt, are questions of law we review de novo. *United States v. Arriaga*, 70 M.J. 51, 56 (C.A.A.F. 2011) (citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)).

A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed with a Court of Criminal Appeals. *Moreno*, 63 M.J. at 142. If there is a *Moreno*-based presumption of unreasonable delay or an otherwise facially unreasonable delay, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of ability to present a defense at a rehearing. *Id.* at 138–39 (citations omitted).

"We analyze each factor and make a determination as to whether that factor favors the Government or the appellant." *Id.* at 136 (citation omitted).

Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.* (citing *Barker*, 407 U.S. at 533 ("Courts must still engage in a difficult and sensitive balancing process.")). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* (citation omitted). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Recognizing our authority under Article 66(c), UCMJ, we also consider if relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 221, 225 (C.A.A.F. 2002).

### 2. Analysis

Appellant's case was originally docketed with the court on 21 February 2019. The overall delay in failing to render this decision by 21 August 2020 is facially unreasonable. *See Moreno*, 63 M.J. at 142. However, we determine there has been no violation of Appellant's right to due process and a speedy appellate review. Analyzing the *Barker* factors, we find the delay is not excessively long. After docketing, we granted nine enlargements of time—eight for Appellant and one for the Government—for appellate counsel to prepare their brief in support of the assignment of error and issues raised pursuant to *Grostefon*, and the answer. Among the reasons for the delay is the time required for Appellant to file his brief on 18 December 2019, and the Government to file its answer on 18 February 2020. Appellant filed a reply on 25 February 2020.

Appellant personally identified seven issues, some alleging multiple legal errors, to which we applied our careful attention. Four of Appellant's allegations required this court to order declarations from trial defense counsel to determine if there was merit to Appellant's claims that he received ineffective assistance from his trial defense counsel. Several of Appellant's claims levied serious allegations of misconduct against investigators and prosecutors involved in his case, including a claim that the cumulative effect of their official actions denied Appellant his fundamental right to a fair trial. Although we find no merit to his claims, the gravity of Appellant's contentions did merit a thorough analysis, resulting in an opinion explaining the court's decision as to each claimed error.

The court affirms the findings and sentence in this case after examining numerous issues that Appellant claims occurred in the pretrial investigation, at trial, and during post-trial processing. However, Appellant has not asserted

his right to speedy appellate review or pointed to any particular prejudice resulting from the presumptively unreasonable delay, and we find none. Finding no *Barker* prejudice, we also find the delay is not so egregious that it adversely affects the public's perception of the fairness and integrity of the military justice system. *See Toohey*, 63 M.J. at 362. As a result, there is no due process violation. *See id.* In addition, we determine that Appellant is not due relief even in the absence of a due process violation. *See Tardif*, 57 M.J. at 223–24. Applying the factors articulated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we find the delay in appellate review justified and relief for Appellant unwarranted.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED.**

FOR THE COURT

AARON L. JONES
Deputy Clerk of the Court